# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 24, 2002

## STATE OF TENNESSEE v. CHESTER LEE SMITH, II

### Direct Appeal from the Criminal Court for Hamilton County
### No. 226581      Douglas A. Meyer, Judge

---

### No. E2001-01099-CCA-R3-CD
### August 20, 2002

---

A Hamilton County jury found the defendant guilty of DUI, third offense.  On appeal, the sole issue is whether the trial court erred in not allowing the defendant to present testimony from a local health department nurse regarding the health department's procedures for storing and transporting blood samples, which are procured by the local health department for reasons unrelated to blood alcohol testing.  We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Ardena J. Garth, District Public Defender; Melanie R. Snipes, Assistant District Public Defender (at trial); and Mike A. Little, Chattanooga, Tennessee (on appeal), for the appellant, Chester Lee Smith, II.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; William H. Cox, III, District Attorney General; and Thomas E. Kimball, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Officer Randy Poland of the Chattanooga Police Department noticed the defendant smelled of alcohol when he stopped the defendant for speeding at 3:00 a.m on November 7, 1998.  The defendant denied drinking alcohol and told Officer Poland a friend had spilled "Bacardi and rum" on him.[1]  According to Officer Poland, the defendant refused to perform the one-leg stand field sobriety test or to count backward.  The officer observed the defendant step out of line and catch his

---

[1]The officer thought this response to be unusual since Bacardi is, in fact, a rum.  Although we are reluctant to take judicial notice of this fact, this panel's reaction to the response matches that of the officer's.

balance as he performed the walk-and-turn field sobriety test. Based on his observations, Officer Poland arrested the defendant for DUI.

The defendant agreed to a blood alcohol test. Officer Poland transported the defendant to a hospital where a technician drew the defendant's blood. Officer Poland then placed the blood sample in the trunk of his patrol car, where it remained for five days until Officer Poland took it to the TBI lab for testing. The test showed the defendant's blood alcohol level to be .20%.

The defendant sought to present the testimony of an LPN with the local health department regarding the health department's regulations and procedures for storing and transporting blood samples, the purpose of which was to attack the reliability of the defendant's blood alcohol results. He argued Tenn. Code Ann. § 55-10-410(a) requires that the procurement of blood samples for the purpose of blood alcohol tests be performed under procedures established by the Department of Health. The trial court refused to allow the defendant to present the LPN's testimony to the jury, but the parties conducted a voir dire examination of her for the record.

The LPN testified health department procedures required blood samples to be moved to the laboratory within a short period of time. If a delay occurred, refrigeration was the most appropriate method of storage. She also stated the procedures called for samples to be protected from exposure to light, excessive vibration, and rough handling, and the laboratory rejects specimens that are improperly transported. The LPN testified she stored blood samples in a shipment box if they were to be transported the same day; otherwise, she placed blood samples in a refrigerator. She stated she knew nothing about testing blood for alcohol content, did not know if preservatives or anticoagulants were in blood alcohol test tubes, and generally did not know if the failure to follow her procedures would have any effect on the testing of blood for alcohol content. The trial court held the LPN was not qualified to testify about procedures for the testing of blood alcohol content.

An appellate court will not reverse a trial court's decision to admit or exclude evidence unless the trial court has abused its discretion. *See* State v. Gilliland, 22 S.W.2d 266, 270 (Tenn. 2000). It is within the discretion of the trial court to determine whether proffered evidence is relevant. State v. Kennedy, 7 S.W.3d 58, 68 (Tenn. Crim. App. 1999). To be relevant, evidence must have a tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable that it would be without the evidence. Tenn. R. Evid. 401. Even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

Initially, we emphasize that the defendant does not contest the admissibility of the results of his blood alcohol test in this appeal. He did not contend at trial, and does not argue on appeal, that the results were inadmissible for the state's alleged failure to comply with Department of Health procedures. Instead, at trial he merely sought, and on appeal now seeks, to attack the reliability of the results by establishing that the storage of the defendant's blood sample failed to comply with the health department procedures required at the local health department for the handling of ordinary blood samples. However, the nurse explicitly stated she knew nothing about the procedures or

requirements for testing blood for alcohol content. Given these circumstances, we cannot conclude the trial court erred in refusing to allow the defendant to submit this testimony to the jury. Even if the proffered testimony were relevant to the reliability of the defendant's blood alcohol test results, that relevance was slight without additional information outside the knowledge of the proffered witness regarding the procedures or requirements for storing blood for blood alcohol tests. Further, due to the witness's lack of knowledge of such procedures or requirements, there was a danger of confusion of the issues or misleading the jury which would substantially outweigh the probative value of the evidence.

In so ruling, we are mindful of the constitutional right of the defendant to "present a defense which includes the right to present witnesses favorable to the defense." State v. Brown, 29 S.W.3d 427, 432 (Tenn. 2000) (citations omitted). However, this right is not absolute; the defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability. *Id.* (citing Chambers v. Mississippi, 410 U.S. 284, 295, 302, 93 S. Ct.1038, 35 L. Ed. 2d 297 (1973)).

The defendant correctly contends the "procurement of a sample of a person's blood for making a [blood alcohol test]" must be performed by an authorized person "under procedures established by the department of health." Tenn. Code Ann. § 55-10-410(a). This sub-section of the statute relates to the "procurement" of the blood sample; it says nothing about its storage or other requirements after the blood has been procured. The purpose of this portion of the statute is to "protect the donor of the sample from being subjected to unhealthful conditions in the procurement of a blood sample and to prohibit the donor from being subjected to unqualified people taking samples." State v. Stowers, 649 S.W.2d 607, 608 (Tenn. Crim. App. 1983); *see also* State v. Cleo Mason, C.C.A. No. 02C01-9310-CC-00233, 1996 Tenn. Crim. App. LEXIS 163, at *33 (Tenn. Crim. App. Mar. 13, 1996, at Jackson). In fact, the defendant does not challenge the manner in which his blood was procured. The defendant has not proven the "procedures established by the department of health" relating to the treatment of blood alcohol samples after the blood has been properly procured. Furthermore, this court cannot take judicial notice of these "procedures," if in fact they do exist. Cleo Mason, 1996 Tenn. Crim. App. LEXIS 163, at *34.

For these reasons, we conclude the trial court did not err in disallowing the proffered evidence. The judgment of the trial court is affirmed.

_____
JOE G. RILEY, JUDGE